Here for Mr. Griffith when you're ready. May it please the court, I'm here on behalf of Jordan Kahn and Jordan Kahn Music Company. 100 years ago, as late as 1915, the common law in this country was that the first to use a trademark had national rights to that trademark regardless of when they started using it. So there was no exception for second users coming in acquiring any rights. Then in 1916, the United States Supreme Court issued its decision in Hanover, which started to create a narrow exception to that rule of priority throughout the United States. And in the Hanover case, the facts in that case were that the junior user had started using the mark second in good faith and without notice. So the Hanover case created an exception in good faith and without notice. In this case, there's no dispute that the party that sued Mr. Kahn is the junior user and that it was adopted by the junior user with knowledge of Mr. Kahn's prior use for years and continuous use thereafter. So the only way in which the plaintiff in the underlying case was able to obtain an injunction was to argue that they somehow fit within a good faith remote user exception and contend that prior knowledge is not dispositive. It is our belief that the better policy is that knowledge should be dispositive. If you look at the statutory schemes that have been put in place by Congress with regard to registered trademarks, under the Lanham Act, a registered trademark, the owner is entitled to a constructive notice throughout the U.S. In other words, a junior user may start using the mark in a region that is completely remote from the trademark registration owner and Congress determined that under the Lanham Act, that junior user, because they started using it after the priority date of the trademark registration, cannot acquire any rights there even if they had no notice. That's the policy that Congress implemented. We believe that is the policy that should be adopted by this court. We don't believe that any of the cases that have been cited by Emerald City have addressed this issue for certain in this circuit. In fact, we believe that, for example, the CP interest case, the court there actually said that there is prior precedent that implies a contrary result, but it did not take the position that the El Chico case, for example, had actually taken that position in an earlier case. We don't believe the CP interest case is controlling either because for several reasons. First of all, if you look at that decision, I don't believe there's really actually any discussion in that decision whether the accused infringer, well actually in that case it was the junior user, whether the junior user adopted the mark with notice of the senior user's use of the mark. But more importantly, in the CP interest case, that decision came up following a jury trial and the issue was whether jury instructions that were issued by the district court judge were proper. And so it's a different set of facts in an injunction and more importantly, although the court in CP interest certainly said that El Chico implied that good faith or knowledge of the prior use was but one factor, in the CP interest case, the court said because that was implied by the prior decision, that jury instruction was okay, but more importantly, as to the holding and whether it is binding and dispositive on our appeal, the more important issue is that in that case the Fifth Circuit noted that even if the jury instruction was wrong, that the junior user, well the senior user would have had to prove that the erroneous instruction altered the outcome of the case. And the Fifth Circuit in CP interest determined that there was no indication that the jury instruction had altered the outcome of the case. So we believe that this court will be the first one to decide or have the opportunity to decide one way or the other whether knowledge of the senior user's mark is dispositive of whether the junior user adopted the mark in good faith. As I've said, we believe that this is consistent with the original common law before the Hanover decision and before the United Drug decision that followed a few years later. We also believe that it is consistent with the statutory scheme that Congress has enacted with regard to trademark registrations. And you know, as a matter of policy, if you look at the El Chico case in particular, because there is a discussion of the facts of prior knowledge in that case, in the El Chico case the junior user, the court found the junior user believed that there was no likelihood of confusion, that they were using it in a remote area. In fact, I believe that the El Chico case also indicated that the mark may have been used on different goods as well. And that presents a very different factual scenario from the case that we are appealing here. And that is the only evidence of good faith that is argued below and that is found in the order, preliminary injunction issued by the district court, is that the junior user acquired good faith because the senior user verbally told the junior user, okay, you can own the name. You can have it. There's no corroboration for this self-serving testimony of Emerald City's principle. And that's why we believe this case is actually ideally suited to show that having a rule that is anything other than prior knowledge being dispositive creates problems that can easily be solved by putting people on notice that all they need to do is document their transactions. All Emerald City needed to do if this conversation actually took place, as a matter of policy, all they had to do was document it, send an email, confirm this is what happened, ask Mr. Kahn, the senior user, to agree in writing, these are business owners, these are businessmen, it's not that difficult to do. And if you look at the treatises and courts that have decided whether oral assignments of trademark rights, for example, are valid, there seems to be universal belief that they're not valid unless the oral assignment is uncontradicted. For example, and here it is contradicted, and that's the bottom line, is here we have a junior user who is, he indisputably cannot acquire any rights by assignment because it was an oral, admittedly, an oral assignment. It was, it is disputed by Mr. Kahn, and there's no evidence whatsoever to corroborate that this conversation took place. And so, under those circumstances, Emerald City never could have acquired ownership of the trademark by way of assignment. The significance of that is that all of the other reasons that a party might obtain the right to use the mark as a junior user, acquiescence, license, none of those doctrines provide for any ownership rights accruing to the junior user. So the only one that provides for ownership rights accruing to the junior user is assignment, and again, that can't have taken place here as a matter of law. So essentially Emerald City is trying to create an oral assignment that flies in the face of what the courts say should not be permitted as a matter of policy, as experts such as McCarthy say should not be permitted as a matter of policy, and do so by fitting it into the good faith exception to the general rule that the senior user acquired rights everywhere. And again, going back 100 years ago, knowing that the rule used to be that there was no exception to seniority, we don't believe that a party should be allowed to fall within a good faith exception based solely upon self-serving, uncorroborated testimony that really amounts to an assignment that's not even enforceable in the first instance. Aside from that issue that we've appealed on, we also believe the injunction should be reversed on a separate reason, which is that the district court judge relied upon a presumption of irreparable harm. We believe we've briefed that issue thoroughly and clearly. We think that after eBay and the winner decision that the four-factor test for plenary injunction should have to be met in a trademark case. Of course, the Supreme Court in eBay said that it had to be met in a patent case, and if you look at the Supreme Court's decision, as we've noted in our brief, the reason that the Supreme Court said that four-factor test had to be met was because unless there was an indication that Congress intended to do something different other than equity, then they were going to follow equitable principles. And in that case, the Patent Act, the Patent Act said that an injunction may issue in accordance with principles of equity. The significance of that is here we're dealing with Lanham Act claims, and the Lanham Act also says at 15 U.S.C. 1116 paragraph A that an injunction may issue according to the principles of equity. So we don't believe there's any difference between the rationale of what Congress has to do in a statutory scheme to provide for anything other than the four-factor equitable test to be in place in a Lanham Act case and a Patent Act case. And for that reason, like the patent owner in eBay versus Merck Exchange, we believe here Emerald City was required to prove that irreparable, prove irreparable harm exists. They could not rely upon a presumption. The record, we believe, shows that Emerald City didn't really even argue that there was irreparable harm in their briefing, and there was only a, there were no findings of fact in the report and recommendation made by the magistrate judge directed to irreparable harm. There was merely a passing line in the report that said Emerald City, and it was actually in the legal part, will be forced, faced with irreparable injury, but there were no facts to support that finding, that we don't believe there were any facts in the record to support that finding. We don't believe that Emerald City could point to any facts. And more importantly, when the district court judge adopted the report and recommendation, he added his own language saying that a presumption of irreparable harm still applied. And that suggests that the district court believed that he, Emerald City, could rely upon that presumption, and we don't believe that post-eBay that's proper. As we've noted, and we've, I believe we've had the opportunity to double-check this since the briefing closed, the no-circuit court of appeals that has addressed the issue of whether a presumption of irreparable harm still applies in a Lanham Act case after eBay has held that it still does. All of the courts that have actually addressed the issue have found that there is no presumption post-eBay, and that would be in the Third Circuit, Ninth Circuit, and Sixth Circuit. The First Circuit, the Second Circuit, and the Eleventh Circuit have at least questioned the presumption post-eBay, and the Fourth, Seventh, and Tenth Circuits, we don't believe, have considered this issue yet. And the Eighth Circuit had one case that post-eBay did seem to provide for presumption, but there was no discussion of eBay in it. Apparently, none of the parties raised that as an issue, and later panels of the Eighth Circuit agreed with us that irreparable harm presumption does not apply. So for these two independent reasons... What about our decision in Abraham? Your Honor, the decision in Abraham is, we don't believe the court there actually made a holding that a presumption of irreparable harm applied. We believe that if you, the reading of that case shows that the accused infringer there had asserted a laches defense, and under some prior precedent, the Conan case, for example, in order to obtain an injunction in view of laches, the courts had been applying something like a degree of prejudice test, and so the district court in Abraham had applied the degree of prejudice test, and there was an appeal. And in that case, the accused infringer who had a laches defense had been accepted. The district court still required him to prove under the degree of prejudice test that an injunction should not issue, and the Fifth Circuit certainly upheld the district court's decision, cited eBay, but there was no real discussion of eBay. I mean... They actually specifically said, all that must, injury is presumed. They do, Your Honor, but interestingly in that, and I do want to make this point, if you look at the citation for that statement in the Abraham case, they're actually citing an earlier version of McCarthy, I believe, that was written before eBay had even been passed, and we just don't believe the language in McCarthy is... Well, that doesn't... Our decision is after eBay, and we've... It's there. I mean, we said, injury is presumed post-eBay. I understand, Your Honor, and I know that they cite eBay for the principles. I just, I don't believe that statement can be read consistent with eBay, and I don't believe that that decision really actually addressed the issue. I mean, I don't see any argument. I'm not privy to the briefing in the case, so I don't know what led up to the decision, but I don't see any argument by the party there that the court improperly specifically relied upon a presumption. It was more that the court put the burden on him to prove an injunction shouldn't issue, which is a little bit different argument, so I don't believe that's a holding that's binding on this panel. Thank you. Thank you, sir. Mr. Bush. May it please the Court. In this particular case, the appellants are asking this court to overrule two important points of Trayvon law that this court has decided in one case very recently and the other relatively recently. There's really no basis for that to be done, and particularly on the facts of this particular case. The court's got it right, and these are unusual facts for this particular situation. The appellant was the second-in-command of the plaintiff of Emerald City. He came to Texas from college in Boston to work for Emerald City. When he came, they came for the purpose of starting a new band. These are cover bands. They play popular music instead of their own music. Emerald City was already very successful, already had another band by that name, but couldn't handle all its bookings, and so it wanted to create another band to meet the overflow. What happened is, at that particular point in time, as the owner of Emerald City testified, he could have used any name for this new band, any name at all. It didn't matter. It could have been the Four Flushers or whatever. Once that band got the bookings overflow from Emerald City Band and went out in the marketplace and established its identity and established its goodwill, the name wouldn't have mattered at the beginning. It was Mr. Kahn who said, I was using this in college back in Boston. I want to use the name Downtown Fever. Mr. Taglioli said, well, to humor him, in effect, he said, okay, but, quote, I own it, and hence the debate about whether or not that will be decided in the lower court, whether or not, at final trial, whether that was an oral assignment, ultimately, and that is ownership of the mark or not, but that misses the point. There is no question in this case that, for years, Emerald City was using the name Downtown Fever with Mr. Kahn's knowing consent and without complaint as the second-in-command at Emerald City. What could be better faith than that? Similarly, getting on with the facts, when Mr. Kahn decided to leave, oh, and by the way, I left out a fact, and in the interim, also, Emerald City actually registered the mark in the state of Texas, Mr. Kahn never objected to any of this, of course not. He was second-in-command of the company, and it was using the name that it, that he wanted them to use. Now, what happened when the parties had their falling out? Well, what happened is, is what I, when I was younger, we called Rolodex cases, and the one that I handled a lot, and that's where the executive or the high-compensated sales rep, you know, left his Rolodex under his arm, and now it's a virtual Rolodex, it's software, in this case, it's FileSaver or whatever it was called, and he takes all the things that are the goodwill of his, the company to which he owed a fiduciary duty to, he even took the passwords to the IT and to the software, because he was in charge of that function too at Emerald City. He takes everything, and ordinarily in these cases, the, let's say it's a broker at a brokerage house, they go down in the hall with all that, all that confidential information of the former employer, but at least they're doing business under a different name, they're at the new brokerage firm, and he's establishing a new identity, a new brokerage firm. In this case, he leaves, and he's out there under the very same name, so he's not just hitting on the same customers from the same customer list that he took, and using the same promotional materials and everything else that he took from Emerald City, he's actually out there in the marketplace saying he's downtown, he's downtown fever ban now. At the time this verified complaint lawsuit was filed, and at the time of the temporary injunction hearing, there were two businesses now out there doing business as downtown fever, hitting on the same customers, using the same, trying, using the same to the extent Emerald City still had access to its IT, its social media, and so on, I mean, the likelihood of confusion is, of course, off the charts. It was from that set of facts that upon trial, the magistrate judge made the conclusion that from those facts that there was irreparable harm. And it's interesting to note that at the original trial phase in front of the magistrate judge, there was no discussion of a quote-unquote presumption of irreparable harm. The magistrate judge didn't hold in his findings and conclusions that there was a presumption. The magistrate judge looked at those relatively extreme set of facts and concluded, as anyone would, that an injunction had to issue, that there was irreparable harm. There were two people out there saying they were downtown fever and at the same time trying to sell the same gigs to the next wedding or whatever it was. On appeal to the district court, it was the district court who, after adopting all of the magistrate judge's findings, it was the district court that added the additional findings that in addition, based on Abraham and so on, this court's authority, that in any event irreparable harm is presumed. Now, in this particular case, in my view, this court only two years ago got it right. In Abraham, it clearly and unmistakably said that there is, in fact, a presumption of irreparable harm when there is a likelihood of confusion in a trademark case, notwithstanding eBay. There is no reason two and a half years later for this court to overrule itself. I would respectfully assume, and the reason why is the inherent nature of trademark is, in my view, very different from a patent case, which eBay was. All you got to do is look at the concurrence in eBay. As they so correctly pointed out, they said times have changed in patent law. Very often, the plaintiff isn't even a competitor at all, like in eBay. It's an entity that exists solely to own technology and try and get royalty fees at it from someone who actually is in business. Just like in eBay, we all know what eBay is, the plaintiff in that case just owns some technology that eBay used for its function, to have this marketplace on the web. The plaintiff wasn't in the same business at all. It wasn't running its own competitive website for people to sell their tchotchkes on. They just wanted a royalty. That's the only reason they'd exist. The plaintiff would make no money out of its technology at all, except for the fact eBay arguably was using it. What happens in the patent cases, as the concurrence does a good job of explaining, is that in that case, if the plaintiff prevails, the court can award a reasonable royalty and determine what a reasonable royalty is for the use of the technology. But if the shift in power is just too enormous, because what the plaintiff was trying to do in that case was trying to shut a giant business, eBay, down. In patent cases, the court said, and the concurrence explained, look, that's giving them this nuclear option that they can extort more than a reasonable royalty for the use of their technology. And so it makes perfect sense in patent cases. I would respectfully submit that if eBay went up and the plaintiff, instead of being like a patent troll, actually had its own competitive marketplace or called Ubay instead of eBay, the result would have been different. But now look at trademark cases and how different they are. In trademark cases, it's not, there's no way for Emerald City to be made whole by implying a reasonable royalty. Those are sales that directly lost, and the record is clear on this. Mr. Kahn was out there with the avowed attention to go steal those gigs from Emerald City, in fact, had taken two. There is, there's no way you can, like in patent law, have a reasonable royalty in that context. It wouldn't be some fraction of the revenue. Emerald City loses all the revenue. But as the cases go on to say in trademark law, what happens is that, to kind of explain why there is a presumption, is that Emerald City has lost total control over its own brand, if you will. It has no control over Kahn. I think we've made, I think that's evident enough. And Kahn is out there doing whatever it wants to do. And there's no way, so Emerald City's reputation is at stake, and of course its goodwill in the marketplace. How can its downtown band, downtown fever band, maintain its goodwill in the marketplace when there's another downtown fever out there that's a different one? And that's why McCarthy, which is interesting because, you know, something about trademark cases, everybody cites McCarthy. It's almost like the restatement of Torts or something. But McCarthy, post-eBay, still says there is a presumption. But more importantly, what it does, what McCarthy also says, is that when you look at the facts of the cases, there seems little doubt that the continuing injury to goodwill and reputation is irreparable and that money damages are inadequate to compensate plaintiff for continuing acts of infringement. It doesn't even say at that point that there is a presumption. What McCarthy is saying is that when you look at the facts, they're always going to lead to, or almost always, I'm sure there's an exception out there somewhere, but it's always going to lead to the conclusion that there is irreparable harm. And that's really what we have in this case. You look at the facts of this record, what other conclusion could you reach? Now, so really, in my point of view, this debate about whether or not there is a presumption or not is a little bit, it's a little bit just semantics. And I realize we're in the semantics business to a large degree, so I don't want to belittle that. But the point is, if there was never this, you know, if there was never this doctrine of the presumption, just like when we were trying it in front of the magistrate judge, there was no discussion of a presumption or not. When you look at a very simple fact of an egregious infringement and confusion in the marketplace like this, the only conclusion you can reach without really needing a lot more evidence, and of course we've got more evidence, is that there's going to be some irreparable harm. And so that's why on these facts, you know, it might be simpler to say, and based because of that, it's natural for the courts, and that's, I submit, how it kind of evolved to where there's just a quote-unquote presumption. I submit there still is, as recently as two and a half years ago in the circuit, but to me it ultimately misses the point. The conclusion you reach from these facts are, is that there can't be two downtown fevers in Dallas, Texas, operating in Texas with the same name at the same time, directly competing in the same market for the same people. So when the district court took it on appeal and added the presumption language, that's just, you know, that's just district court doing its job of, you know, finding another reason to make sure that it didn't get reversed, and the language that I read to the court just now from McCarthy doesn't talk about presumption, it just says there's little doubt that that's what the facts are going to lead you to conclude. But that's the very language this court quoted in Abraham just two and a half years ago. So I respectfully submit that there's no reason for this court to change its view on whether there's a presumption or not, and if we weren't in this situation, if we were in some other courts, in my sense of all the other cases that I read, for example, when an opposing counsel correctly points out that other courts say, well, we're questioning this doctrine now, but don't actually go against it, is it because it's so easy to look at the set of facts and shrug and say it really doesn't matter ultimately if there's a presumption or not, on these facts you're going to come to the same conclusion anyway. I'd like to go ahead and talk about the issue of good faith now. Again, what the appellee is trying to do is get this court to reverse itself and hold that even though, as some other circuit courts have held, as McCarthy says is the correct way of looking at it, even though it is a narrow minority view, and that is that prior knowledge by a junior user of the senior user presumes, excuse me, I'll rephrase that in the negative, the law here is that that is just a factor to consider whether or not there is bad faith. It is not a conclusive presumption. And that struck me this morning when I was arguing with myself in my head, is that what the appellees are trying to do in this case is say on the issue of good faith is that there should be an irrebuttable presumption that if you know, regardless of the facts or circumstances of this particular case, you ought to presume that because Emerald City knew that Mr. Kahn was using the name Downtown Fever when he was in college in Boston, that you ought to presume bad faith and just disregard all the other facts of this particular case. That's not the law. That's not what C.P. Poole's has held it and is still the law in this circuit, that it's just a factor to consider. But this is a unique set of facts. The classic set of facts is that would be if somehow there's some common name, maybe it's a little descriptive, and someone's already using that in a business in some other part of the country, in some mom and pop locally, never heard of them, ends up using the name or a very confusingly similar name. And so then they say, look, we didn't know. Or in some cases, as the law in this circuit is, that maybe they did know, but they didn't intend to profit from the goodwill that maybe a senior user established, for example, in Boston. And none of those cases, to my knowledge, do with this situation. We have an express agreement by the parties that Emerald City would use the name Downtown Fever in this market. In that case, of course, of course Emerald City knew that Mr. Kahn was using it in his college band. That's not the point. The point is that Mr. Kahn not only agreed to it, he urged it. He insisted on it. He said, no, Mr. Taglioli, I like this name, let's use this name. And then for years Emerald City knew about it, and obviously without any complaint from Mr. Kahn, he was the number two person in the organization, as it grew even more bands. So none of those cases are really on point with these facts. What the appellee is trying to do is a little bit of misdirection, I submit. They're trying to say, well, that's an oral assignment and you can't have that. And first of all, we're not here on that issue. Second of all, that's not really a correct statement of the law. You can't have an oral assignment of a trademark. It's a nuance. You can't orally assign. The Trademark Office and USPTO won't let you orally assign the actual registration, but you can have a common law oral assignment of a trademark. And that's going to get decided in the trial court eventually. There's no question that you have in this case is that whether it's an assignment or not, whether or not Mr. Taglioli's testimony that Emerald City now owns it or not holds up, we think it is going to hold up. There's no question that Mr. Kahn agreed and assented to it. And as far as we're concerned at least, Emerald City's the senior user in Texas of that name. And it wouldn't have used the name if not had Mr. Kahn, in joining the Emerald City organization, urged that it's used. Otherwise, we wouldn't be here. Emerald City would call the band anything else it wanted. And that would have been that. So, I respectfully request the Court, as I see my time is coming close to an end, I respectfully request the Court to consider its own recent authority and see that on these facts there's no need to reverse itself. And that regardless of how one wants to view the law from other jurisdictions, these facts would lead to the same result on those two issues. Thank you. Thank you, sir. Mr. Griffith. You have five minutes. Rebuttal. Thank you, Your Honor. Quickly, I just want to note that as to good faith and without notice, in the Hanover decision in 1916, it's important to note that the Supreme Court senior user there adopted the mark in good faith and without notice, not or without notice. It's not a either or, it is good faith and without notice. And so that is our objection to, you know, the good faith issue. It can't just be, we believe that without notice has to be part of that. That is dispositive of the remote good faith user doctrine. It doesn't matter whether he says he had good faith or not. And the importance of that is that opposing counsel talks about Mr. Kahn's acquiescence after the initial alleged oral agreement that they could own the mark. With due respect, it's irrelevant. That's after the agreement that has nothing to do with the state of mind and the facts at the time this agreement supposedly took place and certainly at the time the mark was adopted in Texas. And the other issue is that, again, acquiescence by Mr. Kahn cannot possibly create ownership rights in Emerald City. And that addresses another argument that opposing counsel makes, this idea that we can't have two parties in the same market using the same mark on the same service. That's exactly what acquiescence deals with. Unfortunately, the result of a, anytime a defendant successfully asserts the acquiescence defense, the end result is in that area where the trademark owner acquiesced, there will be potentially two parties using the same mark in a way that's likely to cause confusion. But that has nothing to do with acquisition of ownership rights. I do want to clarify one thing. We don't, we aren't taking the position there's no such thing as an oral assignment of a common law trademark. But to be clear, as we've noted in our brief, we do believe that there's no cases to support the idea that you can have an oral assignment of a common law trademark when it's based upon self-serving contradicted testimony. And that's a key point because if you look at the cases where courts have allowed for oral assignments and common law trademarks, it usually involves, say, there's more formal documents regarding the sale of a business. And then the parties say, yeah, we agreed verbally to assign the trademark in the goodwill. And so here we don't have that. Of course, that's a whole other issue is that there's no goodwill transferred. But or a situation where there's litigation later, somebody says, hey, I acquired trademark rights from a senior user, so I own this as against you. And then the infringer comes and says, oh, no, that was an oral assignment. That's not enforceable. Well, in that case, were the party that orally assigned it, both parties to the assignment agree after the fact there was an oral assignment, it's no problem to allow it because you're not basing a transfer of important trademark rights based solely upon self-serving, uncorroborated testimony. The last thing I'd like to address, unless the Court has questions, is the facts of irreparable harm. Emerald City, in its briefing in here today, has talked a lot about arguments it could have made possibly below, although I would actually submit that a lot of the arguments are merely conclusory. I mean, when you start saying you lose control, you lose goodwill, therefore there's irreparable harm, that's really part of the presumption itself. The fact is there were no findings of fact made by the magistrate judge. There were no findings of fact made by the district court judge relating to irreparable harm. And the importance of that is that even if a presumption applied, it's merely a presumption. We have no opportunity to even challenge, you know, what that's based upon if we don't know the facts that the Court's offhand statement that Emerald City may have faced irreparable harm is based upon. And that's for other claims that were at issue in the hearing. It wasn't just a trademark case. They've accused Mr. Kahn of doing other stuff as well. And for all we know, Judge Bush's offhand statement about irreparable harm with no support may have been based upon use of a customer list or something else. We just don't know. There just are no facts in the record that support a finding of irreparable harm. It's clear the Court relied upon the evidence that have considered this issue and held that post eBay, the presumption of irreparable harm no longer applies in trademark infringement cases. Thank you. Thank you, sir. Counsel. The case is submitted for this week, for this panel. And we adjourn. Sign it out.